IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARMEN M. IGARTÚA, et al.,

        Plaintiffs

          v.

PEDRO TOLEDO, et al.,

        Defendants

CIVIL NO. 09-1923 (JP)

## OPINION AND ORDER

Before the Court is Defendants Carlos Sánchez ("Sánchez"), Jorge L. Padilla ("Padilla"), Juan Pacheco ("Pacheco"), Luz G. Torres ("Torres"), Blanca E. Román ("Román"), José David Rodríguez ("Rodríguez") and Juan Colón's ("Colón") motion for summary judgment (**No. 56**), and Plaintiffs Carmen Igartúa ("Igartúa") and Paul Preston's ("Preston") opposition thereto (No. 65).[1]  Plaintiffs brought the instant action against Defendants in their individual capacity pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of the Fourth Amendment, Fifth Amendment and Fourteenth Amendment to the United States Constitution.[2]  Also, Plaintiffs

---

1.     Also before the Court is Plaintiffs' motion to amend the complaint (**No. 54**) to include Martin Aquino ("Aquino") as a Defendant in this case, and Defendants' opposition thereto (No. 60).  Said motion is **DENIED**.  The Court will not allow Plaintiffs to amend the complaint at this late stage in the proceedings because doing so would require altering the schedule in this case.

2.     In a prior Opinion and Order (No. 16) and its accompanying Partial Judgement (No. 26), the Court dismissed Plaintiffs' Fifth Amendment, Fourteenth Amendment, and Conspiracy claims against Defendants. Also, the Court dismissed the supervisory liability claims against Defendant Pedro Toledo and PPR Supervisors John Doe 1-4.  As such, the only claims pending before the Court

CIVIL NO. 09-1923 (JP)            -2-

brought Puerto Rico law claims under Article 1802 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31, § 5141. For the reasons stated herein, Defendants' motion for summary judgment is hereby **GRANTED IN PART AND DENIED IN PART.**

I.    **MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE**

       The following material facts ("ISC UMF") were deemed uncontested by all parties hereto at the June 10, 2010, Initial Scheduling Conference (No. 48).

   1.    On September 15, 2008, PPR OFF Padilla, PPR OFF Pacheco, and PPR OFF Torres entered Plaintiffs' home and handcuffed Igartúa.

   2.    An arrest warrant was issued by the Court of First Instance, Humacao Part against Plaintiff Igartúa on September 15, 2008.

   3.    An arrest warrant was issued by the Court of First Instance of Humacao against Plaintiff Preston on September 15, 2008.

   4.    Plaintiff Igartúa and Preston engaged in a scuffle with a neighbor and his daughters on May 31, 2008.

   5.    Probable cause for the arrest of Plaintiff Igartúa was found by the Court of First Instance, Humacao Part.

_____

are the Section 1983 claims based on the alleged violation of Plaintiffs' Fourth Amendment rights and the Puerto Rico law claims.

CIVIL NO. 09-1923 (JP)          -3-

6.   Probable cause for the arrest of Plaintiff Preston was found by the Court of First Instance, Humacao Part.

7.   Bail was set for both Plaintiffs at a total of $300,000.00.

8.   Bail was set for Plaintiff Igartúa at $160,000.00.

9.   Bail was set for Plaintiff Preston at $140,000.00.

10.  The criminal case against Plaintiffs was dismissed.

The following facts are deemed uncontested ("UMF") by the Court because they were included in the motion for summary judgment and opposition and were agreed upon, or they were properly supported by evidence and not genuinely opposed.

1.   Plaintiff Igartúa's last job was towards the end of 2006 with FEMA, after she got laid off.

2.   At the time of her arrest, Plaintiff Igartúa was a housewife and was not working.

3.   Plaintiff Igartúa was arrested on September 15, 2008.

4.   On September 13, 2008, Plaintiffs Igartúa and Preston were summoned to appear at the Humacao Courthouse on September 15, 2008.

5.   On September 15, 2008, Plaintiff Igartúa did not appear at the Humacao Courthouse as requested by the summons.

6.   During Igartúa's arrest, Román and her supervisor were not inside Igartúa's house.

CIVIL NO. 09-1923 (JP)            -4-

7.   After the arrest on September 15, 2008, Igartúa refused to have her mugshot and fingerprints taken at the police station.

8.   Preston was aware of the summons that was issued to appear in court.

9.   Preston has not searched for medical assistance to deal with the alleged incident of September 15, 2008.

10.  Román received from the Magistrate Judge the arrest warrants for Plaintiffs Igartúa and Preston.

11.  Sánchez was present when the clerk's office issued arrest warrants against Igartúa and Preston.

12.  Officers Torres, Padilla and Pacheco saw the arrest warrants issued against Igartúa and Preston before leaving the CIC towards Igartúa's home.

13.  After seeing the arrest warrants against Igartúa and Preston, officers departed towards Igartúa's home.

14.  Agent Pacheco informed Igartúa that there was an arrest warrant against her and that she had to accompany the officers.

15.  Agent Padilla showed the arrest warrant to Igartúa.

16.  Agent Román and Sergeant Sánchez did not enter Igartúa's home.  They stayed at the street level.

17.  On September 15, 2008, Defendant Colón worked as a supervisor for the Property Crimes Division at Las Piedras

CIVIL NO. 09-1923 (JP)          -5-

and Naguabo Sector from 8am to 5pm and the execution of arrest warrants was not part of his duties.

18. Colón did not participate in the arrest of Igartúa.

19. Agent Rodríguez did not participate in the arrest of Igartúa.

20. On September 15, 2008, Rodríguez was on vacation leave.

21. Agents Román, Padilla, Torres, Pacheco and Sergeant Sánchez, all stated that neither Colón nor Rodríguez were part of Igartúa's arrest.

22. During the execution of Igartúa's arrest warrant, neither agent Pacheco, nor agent Torres nor agent Sánchez carried a baton or club.

23. Igartúa states that she did not resist arrest, that she was assaulted, beaten, kicked, tortured with handcuffs that were being twisted, verbally abused and humiliated. More specifically, she stated that while she was doing the laundry, the electricity went out, everything became black, and she did not have her glasses on, she heard the dog barking at a distance, the dog stopped barking all of a sudden, she reached for her bedroom door in order to exit the bedroom when the door opened and she was grabbed and thrown to the floor, she did not know what was going on, she was begging for her glasses and to be allowed to dress up as she was wearing her underwear, she was not

CIVIL NO. 09-1923 (JP)          -6-

> allowed to get up from the floor, while she was pinned to the ground, somebody kicked and hit her, she was dragged uphill into a patrol car.

24. During his deposition, Preston testified that during the last two years, his wife has been out of the house only about ten times, that she is now a broken woman and that he has no damages "[o]ther than the fact that I don't have my wife."

## II.  **LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT**

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Zambrana-Marrero v. Suárez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993); Canal Ins. Co. v. Benner, 980 F.2d 23, 25

CIVIL NO. 09-1923 (JP)          -7-

(1st Cir. 1992).  The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case.  See Mack v. Great Atl. and Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989).

On a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. See Anderson, 477 U.S. at 248; Celotex, 477 U.S. at 324; Goldman, 985 F.2d at 1116.

## III.  **ANALYSIS**

Defendants request that summary judgment be granted arguing, *inter alia*, that: (1) Plaintiffs' excessive force claims fail because the arresting officers conduct was reasonable under the circumstances; (2) Plaintiffs' failure to intervene claims fail

CIVIL NO. 09-1923 (JP)          -8-

because Defendants Sánchez and Román's presence at the scene, without more, is insufficient to hold them liable for the alleged actions of other officers; (3) the claims against Defendants Colón and Rodríguez should be dismissed because they were not involved in any way in the alleged incidents leading to this case; (4) the claims against Sánchez for supervisory liability fail; (5) Defendants are entitled to qualified immunity; and (6) Plaintiff Preston's negligence state law claim should be dismissed since he suffered no damages.[3] Plaintiffs' oppose the motion.  The Court will now consider the parties' arguments.

### A.  Section 1983

Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . .'" Rockwell v. Cape Cod Hospital, 26 F.3d 254, 256 (1st Cir. 1994) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982)).  To succeed on their Section 1983 claims, Plaintiffs must make two showings:  the existence of a federal or statutory right; and a deprivation of that right by a person acting under color of state

---

3.    Defendants also request summary judgment on Plaintiffs' supervisory liability claims against Defendant Sánchez for his acts as supervisor of Román. Said request is **MOOT**.  As explained by Plaintiffs in their opposition, Plaintiffs never brought supervisory liability claims against Sánchez.

CIVIL NO. 09-1923 (JP)            -9-

law. See id. (citing Watterson v. Page, 987 F.2d 1, 7 (1st Cir. 1993)).

### 1.  Excessive Force Claims

In the instant case, Plaintiffs bring excessive force claims against Defendants Torres, Pacheco, and Padilla based on said Defendants actions while arresting Plaintiff Igartúa.  Defendants argue that it is beyond dispute that their actions while arresting Plaintiff Igartúa were reasonable under the circumstances. Plaintiffs counter that, based on the evidence before the Court, a reasonable jury could conclude that the acts of Defendants Pacheco, Torres, and Padilla were unreasonable.

To succeed on an excessive force claim, Plaintiffs "must show that the defendant officer employed force that was unreasonable under the circumstances." Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007) (citing Graham v. Connor, 490 U.S. 386, 397 (1989)). To determine whether the force used was reasonable, the events which led to the excessive force claim "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." See Graham, 490 U.S. at 396.

"The reasonableness inquiry is objective, to be determined 'in light of the facts and circumstances confronting [the officers] . . . .'" Jennings, 499 F.3d at 11 (quoting Graham, 490 U.S. at 397).  The Court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to

CIVIL NO. 09-1923 (JP)          -10-

the safety of the officers or others, and whether [the individual] is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. Also, the reasonableness determination must account "for the need of police officers 'to make split second judgments-in circumstances that are tense, uncertain and rapidly evolving-about the amount of force that is necessary in a particular situation.'" Berube v. Conley, 506 F.3d 79, 83 (1st Cir. 2007) (quoting Roy v. Inhabitants of City of Lewiston, 42 F.3d 691, 695 (1st Cir. 1994)).

Here, the facts confronting the officers prior to the arrest are clear. On May 31, 2008, Plaintiffs Igartúa and Preston engaged in a scuffle with a neighbor and his daughters. ISC UMF 4. On September 13, 2008, Plaintiffs Igartúa and Preston were summoned to appear on September 15, 2008 at the Humacao Courthouse. UMF 4. Plaintiff Igartúa did not comply with said summons by failing to appear at the Humacao Courthouse. UMF 5. As such, the Court of First Instance for Humacao issued arrest warrants against Preston and Igartúa on September 15, 2008. ISC UMF 2 and 3. The Magistrate Judge provided Defendant Román with the arrest warrants for Plaintiffs Preston and Igartúa. UMF 10. Prior to leaving for Plaintiffs' house, Defendants Torres, Padilla and Pacheco saw the arrest warrants. UMF 12 and 13. Defendants Torres, Pacheco and Padilla were the only officers to enter Plaintiffs' house. ISC UMF 1 and UMF 16.

CIVIL NO. 09-1923 (JP)          -11-

With regard to what actually occurred during the arrest, the facts are not as clear.  Defendants have presented evidence that when they arrived at Plaintiffs' house, they identified themselves as police officers and called for Plaintiff Igartúa.  Plaintiff Igartúa did not respond.  Defendant Torres stated that through a window in Plaintiffs' house she saw Igartúa hiding behind a wall.  As such, Defendants Torres, Pacheco, and Padilla entered the house to execute the arrest warrant.  Plaintiff Igartúa was in one of the bedrooms when she was found by said Defendants.  Defendant Padilla showed Igartúa the arrest warrant and informed her that she had to accompany the officers.

Defendants presented evidence that at said point Plaintiff Igartúa resisted arrest and refused to cooperate with the officers. According to Defendants, Plaintiff pushed Defendant Padilla, threw herself on the ground facing down, kicked the officers, hid her hands under her body to avoid being handcuffed and screamed while Defendants Torres, Pacheco and Padilla tried to arrest her. Defendants stated that because of Plaintiff's resistance, including Plaintiff's refusal to stand up and to get into the patrol car, they had to carry her to the patrol car.  Defendants then state that even after the arrest Igartúa continued to refuse to cooperate by refusing to be photographed and fingerprinted at the police station and by refusing medical treatment at the hospital.

CIVIL NO. 09-1923 (JP)          -12-

On the other hand, Plaintiffs counter by presenting evidence that while Plaintiff Igartúa was doing laundry in her home, the electricity went out and everything became dark. Also, Plaintiffs presented evidence that Igartúa heard the dog barking from a distance until all of a sudden the dog stopped barking. Plaintiff stated that she did not hear anyone call her name. After said incidents, Plaintiff Igartúa attempted to exit the bedroom. Plaintiff stated that, as she reached for the door, the door was opened by the officers and she was grabbed and thrown to the floor.

While held on the floor, Plaintiff Igartúa states that she was confused as to what was happening, and constantly requested her eye glasses and to be allowed to dress since she was in her underwear. Plaintiff also stated that while the officers were attempting to arrest her she did not resist and was kicked and hit. Plaintiffs also presented evidence that the handcuffs were being twisted by the officers and that the officers verbally abused her. Plaintiff also stated that she was dragged up a hill to the patrol car by Defendants and that Defendants did not allow her to stand up. While being dragged, Plaintiff alleges that she was hurt since the material was like rock.

Based on the evidence presented by the parties, the Court finds that a jury could conclude that Defendants actions while arresting Plaintiff Igartúa were unreasonable. In the instant case, Plaintiffs have presented sufficient evidence to create a question of fact as

CIVIL NO. 09-1923 (JP)          -13-

to whether Plaintiff Igartúa resisted arrest.  If a jury were to determine that Plaintiff Igartúa did not resist arrest, Plaintiffs' evidence that Defendants hit her, dragged her and verbally abused her while Plaintiff had been subdued would be sufficient evidence for a jury to determine that Defendants engaged in excessive force. Accordingly, Defendants' argument fails.

### 2.   Failure to Intervene Claims

Plaintiffs also bring failure to intervene claims against Defendants Román and Sánchez.  To succeed on a failure to intervene claim under Section 1983, Plaintiff must show that "[a]n officer who is present at the scene [of an arrest] . . . fails to take reasonable steps to protect the victim of another officer's use of excessive force[.]" <u>Gaudreault v. Municipality of Salem, Massachusetts</u>, 923 F.2d 203, 207 n.3 (1st Cir. 1990).  However, an officer cannot be held liable if he or she has no realistic opportunity to prevent the use of excessive force.  <u>See</u> <u>id.</u>

In order to hold officers liable for failure to intervene, the alleged excessive force must take place within the context of an arrest, interrogation or similar maneuver.  <u>Martínez v. Colón</u>, 54 F.3d 980, 985 (1st Cir. 1995) (citing <u>Gaudreault</u>, 923 F.2d at 206-07 & n.3).  Furthermore, the "mere presence [of an officer] at the scene, without more, does not by some mysterious alchemy render him legally responsible under section 1983 for the actions of

CIVIL NO. 09-1923 (JP)          -14-

a fellow officer." <u>Calvi v. Knox County</u>, 470 F.3d 422, 428 (1st Cir. 2006) (citing <u>Gaudreault</u>, 923 F.2d at 207 n.3).

Defendants argue that the claims against Román and Sánchez should be dismissed because said Defendants did not enter the house to arrest Igartúa. Instead, said Defendants remained on the hilltop securing the perimeter and had no involvement with the actual arrest of Igartúa. As such, Defendants argue that Román and Sánchez were merely present at the scene and therefore cannot be held responsible the actions of the other Defendants.

After considering the arguments and evidence, the Court finds that Defendants' argument fails. Defendants are correct that Plaintiffs have not put forth any evidence that Defendants Román and Sánchez were involved in the handcuffing of Igartúa. However, Plaintiffs allegations and evidence of excessive force go beyond the handcuffing of Igartúa. Said allegations and evidence extend to the acts of Defendants in dragging Igartúa to the patrol car and putting her in the patrol car. Plaintiffs have presented evidence that Defendants Pacheco, Torres, and Padilla dragged her, instead of letting her stand and walk, all the way to the patrol car. Plaintiff stated that she suffered pain as a result of being dragged because the material on the ground was like rock.

Plaintiffs have also presented evidence that Defendants Román and Sánchez were involved in said dragging incident. Plaintiff Igartúa stated that once Defendants Pacheco, Torres and Padilla

CIVIL NO. 09-1923 (JP)          -15-

approached a camera near Plaintiffs' gate they placed Plaintiff
Igartúa on the ground and consulted with Román and Sánchez as to what
action to take next.  Thereafter, Plaintiff stated that Defendants
Pacheco, Torres and Padilla continued to drag her to the patrol car.
Based on said evidence, the Court finds that there is a question of
material fact as to whether Defendants Román and Sánchez had a
realistic opportunity to prevent Defendants Pacheco, Padilla and
Torres from allegedly dragging Plaintiff Igartúa.

     **B.   Claims Against Rodríguez and Colón**

     Defendants argue that all the claims against Defendants
Rodríguez and Colón should be dismissed because they were not
involved in the incident that led to this case.  UMF 17, 18, 19, 20,
and 21.  Plaintiffs agree with Defendants.  As such, the Court will
enter Judgment dismissing all the claims against Rodríguez and Colón.

     **C.   Qualified Immunity**

     Qualified immunity "provides defendant public officials an
immunity from suit and not a mere defense to liability." Maldonado
v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009).  Qualified immunity
has a two-part test that requires that the Court "decide: (1) whether
the facts alleged or shown by the plaintiff make out a violation of
a constitutional right; and (2) if so, whether the right was 'clearly
established' at the time of the defendant's alleged violation."
Id. at 268-69 (quoting Pearson v. Callahan, 129 S. Ct. 808,
815-16 (2009)).

CIVIL NO. 09-1923 (JP)          -16-

Whether a right is considered to be "clearly established" is itself a two-part inquiry in which the Court must decide (1) whether "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right[,]" and (2) whether in the specific context of the case, "a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." Id. at 269 (internal quotation marks and citations omitted).  The first part of said inquiry focuses on the status of the law at the time of the event in question.  Id.  The second part deals with the specific factual context of the case to decide whether a reasonable official in the defendant's place would have understood that his conduct violated the asserted constitutional right.  Id.  To be liable, the official must be on notice that his conduct is unconstitutional.  Costa-Urena v. Segarra, 590 F.3d 18, 29 (1st Cir. 2009) (citing Maldonado, 568 F.3d at 269).

Defendants argue that they are entitled to qualified immunity because it was reasonable for Defendants to believe there was no constitutional violation and that Igartúa had to be carried out of the house since (1) an arrest warrant had been issued, (2) Igartúa refused to cooperate, and (3) Igartúa continuously resisted arrest. Defendants' argument fails at this point in time.  As previously explained by the Court in this Opinion and Order, Plaintiffs have presented sufficient evidence for a jury to find that Defendants

CIVIL NO. 09-1923 (JP)          -17-

violated Plaintiffs' rights.  Further, the Court has determined that Plaintiffs raised a question of material fact as to whether Igartúa resisted arrest.  If the jury finds that Igartúa did not resist arrest, Defendants' alleged acts of beating and dragging Igartúa would have violated Plaintiff's clearly established Fourth Amendment rights.  <u>See</u> <u>Alexis v. McDonald's Restaurants of Massachussetts, Inc.</u>, 67 F.3d 341, 352-53 (1st Cir. 1995) (finding sufficient evidence to support excessive force claims when individual who did not resist arrest was pulled by officers from a booth with sufficient force to bruise her legs and was dragged by the police officers to the police car).

   D.   **Puerto Rico Law Claims**[4]

   Defendants also request dismissal of Plaintiff Preston's negligence claim based on Article 1802 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31, § 5141.  Specifically, Defendants argue that Plaintiff Preston's negligence claim fails because he suffered no damages.  Said argument fails.  Contrary to Defendants' contention, Plaintiff Preston stated in his deposition that he has suffered damages because he has lost his wife.  UMF 24.  As such, the Court determines that a reasonable jury could determine that Plaintiff Preston suffered damages.

---

4.   With regard to the Puerto Rico law claims, Defendants request that, if the Court dismisses the federal claims, the Court exercise its discretion and dismiss the state law claims.  In light of the fact that the Court has not dismissed the federal claims, the Court **DENIES** Defendants' request to dismiss the state law claims.

CIVIL NO. 09-1923 (JP)          -18-

IV.   **CONCLUSION**

In conclusion, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment.  The Court will enter a separate judgment dismissing Plaintiffs' claims against Defendants Rodríguez and Colón.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of January, 2011.


                                        s/José Antonio Fusté
                                     JOSÉ ANTONIO FUSTÉ
                                  CHIEF U.S. DISTRICT JUDGE